IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARON BARDILL, | No. C 09-03025 CRB |
| Plaintiff, | **ORDER GRANTING JUDGMENT** |
| v. | |
| LINCOLN NATIONAL LIFE INSURANCE, THE, ET AL., | |
| Defendant. | |

Sharon Bardill left her job as Director of Administration at Caminar in January 2005. She suffered from various mental and physical health problems and filed for long-term disability insurance benefits in April 2005. Her insurer, Lincoln,[1] denied her claim in August 2005.

Bardill appealed Lincoln's denial. Lincoln conducted a more extensive investigation and granted her 24 months of benefits for mental disability,[2] but affirmed its previous denial of long-term benefits for physical disability. Bardill continued to fight Lincoln's denial until she had exhausted her appeals. She then filed suit for relief under the Employee Retirement

---

[1] There are several named defendants, but for the purposes of this order they are functionally the same organization. The insurer went by many names, but will be referred to by "Lincoln" for the sake of simplicity. See Pl.'s Mot. for J. at 5-6.

[2] Bardill's coverage for mental disability was limited to 24 months.

Income Security Act ("ERISA"). Plaintiff has filed a motion for judgment and Defendant has filed a motion for summary judgment. The Court grants judgment for Defendant.

## I. BACKGROUND

Plaintiff Bardill worked as Director of Administration from 1993 to January 3, 2005. Def. Cross-Mot. for Sum. J. at 6. Her job was classified as sedentary, although it did require her to travel with some frequency. (LFG-SB-357-58; LFG-SB-570; LFG-SB-091). At the time she left her job she was 48-years-old, weighed over 200 pounds and suffered from a variety of physical ailments, including diabetes, asthma, high blood pressure, thyroid problems, and chronic pain. (LFG-SB-465; LFG-SB-352). She also suffered from mental problems, including depression. (LFG-SB-269). Plaintiff further claims that she suffered from fibromyalgia, but there is some dispute about whether or not she had this disorder. (LFG-SB-346). Plaintiff's last day of work was in December of 2004, however, the "date of disability" is January because she took a two-week vacation to the Panama Canal before officially leaving her job. (LFG-SB-696).

After returning from her trip, Plaintiff filed a claim for disability benefits. In her claim, she reported that she could not return to work because of "pain, tiredness, sleep deprivation, depression, neuropathy [and] swollen neck." (LFG-SB-758). She also reported in her claim that she first noticed these symptoms five years earlier. Id. In support of her claim, Plaintiff submitted records detailing her medical history. These reports included past diagnoses of fibromyalgia and a history of chronic pain. (LFG-SB-689-94).

### A. Initial Claim

Lincoln had Plaintiff's medical records reviewed by a registered nurse, another specialist, and finally Dr. Sahniah Siciarz-Lambert, who specializes in internal medicine. Dr. Siciarz-Lambert concluded that the "medical findings do not support the presence of physical impairment which would have precluded the claimant from performing her usual and customary occupation." (LFG-SB-696). Dr. Siciarz-Lambert added that the records did not "clearly establish a diagnosis of fibromyalgia" based on objective criteria. (LFG-SB-694). The doctor noted that Plaintiff's strength was normal and that she had just returned from a

vacation before filing her claim. Id. Dr. Siciarz-Lambert also opined that Plaintiff's medical condition was not severe and that her asthma and blood pressure were under control. (LFG-SB-697). Plaintiff's claim was denied. (LFG-SB-569). In its denial, Lincoln explained the reasons for the denial, relying principally on Dr. Siciarz-Lambert's report on Plaintiff's medical records. (LFG-SB-569-572). Defendant also advised Plaintiff of her right to appeal the decision. Id.

### B.     First Appeal

Plaintiff appealed Lincoln's denial. (LFG-SB-349-351). She included with her appeal letters from a co-worker and the CEO of her former employer. (LFG-SB-353-356). She also included a letter from Tasha Stevenson, a nurse practitioner who had been treating Plaintiff for more than eight years. (LFG-SB-352). These letters stated that Plaintiff was in no condition to work. Stevenson wrote that Plaintiff "remains unable to work . . . due to multiple medical problems and chronic pain which has resulted in severe depression." Id. Stevenson emphasized that this was only the second such letter she had written in her career and that she "cannot think of a patient I have treated that might be a more appropriate candidate" for disability benefits. Id.

In response to the appeal, Lincoln had Plaintiff undergo an independent medical exam. (LFG-SB-336). Dr. Umesh Sab, who is board-certified in internal medicine, performed the exam and reviewed Plaintiff's medical records and job description. (LFG-SB-298-306). Dr. Sab concluded that Plaintiff suffered from depression, anxiety, diabetes, hypertension, thyroid disease, and had a history of granuloma annulare. (LFG-SB-305). The doctor also said that Plaintiff "appears to have a partial expression of fibromyalgia" but did not "fully meet the objective criteria for this disorder." Id. Dr. Sab wrote that Plaintiff continues to do poorly in terms of her pain, fatigue, and loss of strength. Id. "She is unable to use the computer, or walk long distances unassisted. Additionally, she became irritable, had memory loss, and frustration. She sleeps poorly. Her symptoms are aggravated by stress." (LFG-SB-299). However, Dr. Sab concluded that Plaintiff is "probably capable of doing her routine work provided extensive travel or excessive walking is not involved" and

that her "level of physical disability does not appear to have deteriorated substantially in the last year or so." (LFG-SB-305).

Plaintiff's nurse practitioner, Stevenson, responded to Dr. Sab's report in a letter. (LFG-SB-296-97). Stevenson argued that Dr. Sab had not adequately addressed Plaintiff's complaints of tinnitus, vertigo, and loss of taste. Id. In addition, Stevenson said that Plaintiff's health had declined significantly in the last five years – particularly in the previous year. Id.

During this first appeal, Lincoln also had an independent psychiatrist review Plaintiff's medical records. Dr. Michael Barnett concluded that Plaintiff's mental problems were "severe enough to keep her from working." (LFG-SB-286). However, Dr. Barnett noted that he had difficulty reviewing Plaintiff's claim because he did not meet with her and he could not say for certain whether her mental problems were caused by her physical problems. (LFG-SB-283-88). Based on this report, Lincoln agreed to pay Plaintiff's claim for mental disability. (LFG-SB-269). However, Lincoln continued to deny Plaintiff's claim for physical disability. Id.

### C. Second Appeal

Plaintiff filed a second appeal of Lincoln's denial of benefits in August 2006. (LFG-SB-196-198). Along with the appeal, Plaintiff provided Lincoln with additional medical records from 2006 and a Notice of Award from the Social Security Administration awarding Social Security disability benefits to Plaintiff.[3] The additional medical records provided to Lincoln showed that Dr. Alan Lash had examined Plaintiff and concluded that Plaintiff "clearly has mild to moderate osteoarthritis of the hands" and could have connective tissue disease. (LFG-SB-212). Dr. Lash also reported that Plaintiff had "some symptoms" of Raynaud's phenomenon. Id. The doctor recommended that Plaintiff "try measures such as taking Tylenol, glucosamine and chondroitin and paraffin dips." (LFG-SB-213).

---

[3] The award of Social Security benefits prompted Lincoln to recalculate Plaintiff's benefits. Plaintiff repaid Lincoln financial $15,258.77 of the amount the insurer had already paid Plaintiff. (LFG-SB-244).

4

1    Lincoln arranged for an independent occupational therapist to examine Plaintiff before
2 deciding on the second – and final – appeal. (LFG-SB-191-194). The occupational therapist,
3 Patty Tam, concluded that Plaintiff was capable of working in a sedentary job for eight hours
4 a day. (LFG-SB-152). Plaintiff showed she could lift ten pounds occasionally, but was not
5 able to crawl, kneel and climb stairs safely because of "decreased balance and weakness in
6 her lower extremities," according to Tam. Id. Tam's report notes that Plaintiff reported that
7 she could do "simple cooking, dishwashing, simple housecleaning, simple gardening, and
8 laundry." (LFG-SB-155). Plaintiff was also able to drive a car and – no small feat – took
9 fifteen minute walks five times a day. Id. Tam also reported that Plaintiff had the energy for
10 "light" work, which placed her in the "aerobic capacity level of POOR." (LFG-SB-152).
11 The results of the Tam's test are not entirely reliable, however, because Tam reported that
12 Plaintiff exhibited "self-limiting behavior," which leaves her true abilities open to
13 "conjecture." (LFG-SB-152).

14    Nurse practitioner Stevenson responded to Tam's report, saying that she disagreed
15 with the finding that Plaintiff was able to work an eight hour day. (LFG-SB-143).
16 Stevenson argued that Plaintiff "has chronic pain along with limited mobility and marked
17 decreased hand strength from both osteoarthritis and tendinitis" – among other problems. Id.

18    On January 18, 2007, Defendant denied Plaintiff benefits for a physically disabling
19 condition. (LFG-SB-137). The final letter denying her claim notes Plaintiff's medical
20 history in detail, her award of Social Security benefits, and the evaluations done on behalf of
21 Lincoln. (LFG-SB-137-140). The letter concluded that many of Plaintiff's symptoms had
22 been present for more than four years before she left her job. (LFG-SB-140). In addition, it
23 noted that while Plaintiff walks with a cane and has mild to moderate osteoarthritis, she was
24 capable of performing the duties of a sedentary job. Id. Lincoln also found that Plaintiff's
25 diabetes and blood pressure have long been under control. Id. It concluded that "the medical
26 documentation does not support restrictions or limitations that would preclude Ms. Bardill
27 from performing her own sedentary occupation . . . ." Id.

28

5

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 52(a)(1) provides that "[i]n an action tried on the facts without a jury . . ., the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record . . . or may appear in an opinion or a memorandum of decision filed by the court. Judgment must be entered under Rule 58."[4] In a Rule 52 motion, as opposed to a Rule 56 motion for summary judgment, the court does not determine whether there is an issue of material fact, but whether the plaintiff is disabled under the policy. See Kearney v. Standard Ins. Co., 175 F.3d 1084, 1095 (9th Cir. 1999) (en banc). The Court is to "evaluate the persuasiveness of conflicting testimony," and make findings of fact. Id. This is considered a "bench trial on the record," which may "consist[] of no more than the trial judge rereading [the administrative record]." Id.

Plaintiff carries the burden of showing that she was disabled under the terms of the Plan during the claim period. See Sabatino v. Liberty Life Assurance Co. of Boston, 286 F. Supp. 2d 1222, 1232 (N.D. Cal. 2003). The standard Plaintiff must meet is preponderance of the evidence. See Finley v. Hartford Life & Acc. Ins. Co., No. 06-6247, 2007 WL 4374417, at *7 (N.D. Cal, Dec. 14, 2007).

The standard of review for the Defendant's denial of coverage is abuse of discretion. A challenge to an ERISA plan's denial of benefits under 29 U.S.C. § 1132(a)(1)(B) is reviewed for abuse of discretion if the plan gives the administrator discretionary authority to construe the terms of the plan. Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 963 (9th Cir. 2006) (abrogated on other grounds); see Firestone Tire & Rubber Co. v. Bruch, 489 U.S.

---

[4] Plaintiff moved for judgment under Rule 52. However, Defendant moved for summary judgment, and argues that Plaintiff should not have moved under Rule 52, in accordance with prior agreements. Def.'s Opp. to Mot. for J. at 22. The proper motion is one under Rule 52. "Since a court reviewing for an abuse of discretion must review the administrative record and make something 'akin to a credibility determination' . . . the court should set forth findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52. Accordingly, cross-motions may be decided pursuant to Rule 52 even where one or both parties has styled its motion as a motion for summary judgment." Burke v. Pitney Bowes Inc. Long Term Disability Plan, 640 F. Supp. 2d 1160, 1170 (N.D. Cal. 2009) (citing Hoskins v. Bayer Corp. & Bus. Serv. Long Term Disability Plan, 564 F. Supp. 2d 1097, 1103 (N.D. Cal. 2008); Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 969 (9th Cir. 2006); Pannebecker v. Liberty Life Assur. Co. of Boston, 542 F.3d 1213, 1217 (9th Cir. 2008)) (internal citations omitted).

101, 115 (1989). Plaintiff does not dispute that discretionary authority was given here.[5] See Pl.'s Mot. for J. at 21.

"An ERISA administrator abuses its discretion only if it (1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact." Boyd v. Bell, 410 F.3d 1173, 1178 (9th Cir. Cal. 2005) (citing Bendixen, 185 F.3d at 944). Lincoln plainly did not render a decision without explanation, nor did it misconstrue the plain meaning of the plan.[6] Plaintiff instead argues that Lincoln relied on "clearly erroneous findings of fact." A finding is "clearly erroneous" when "although there is evidence to support it, the reviewing [body] on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Id. (quoting Concrete Pipe & Prods. v. Constr. Laborers Pension Trust, 508 U.S. 602, 622 (1993)). The administrator's decision will be upheld if "it is based upon a reasonable interpretation of the plan's terms and was made in good faith." Id. (quoting Estate of Shockley v. Alyeska Pipeline Serv. Co., 130 F.3d 403, 405 (9th Cir. 1997)).

In the absence of a conflict of interest, "the plan administrator's decision can be upheld if it is 'grounded on any reasonable basis.'" Montour v. Hartford Life & Accident Ins. Co., 582 F.3d 933, 940 (9th Cir. Cal. 2009) (quoting Sznewajs v. Bancorp Amended & Restated Supplemental Benefits Plan, 572 F.3d 727, 734-35 (9th Cir. 2009)). However, if the same entity both pays the benefits and evaluates the claims, there is a "structural conflict of interest" and a more complex analysis is required. Id. A court can give more or less weight to a conflict depending on what the other evidence shows. Saffon v. Wells Fargo & Co. Long Term Disability Plan, 522 F.3d 863, 868 (9th Cir. 2008). A court can "view the

---

[5] The text of the plan reads: "Except for the functions that the Policy clearly reserves to the Group Policyholder or Employer, the company has the authority to: 1. manage the Policy and administer claims under it; and 2. interpret the provisions and resolve questions arising under the Policy." (LFG-SB-013).

[6] Lincoln issued several letters and reports to Plaintiff detailing its decision and the reasoning behind the decision. In addition, there is no dispute over the language of the plan, nor how it should be construed. The plan defines total disability as an injury or sickness that renders the insured unable to "perform each of the main duties of the Insured Employee's regular occupation; and . . . perform each of the main duties of any gainful occupation for which the Insured Employee's training, education or experience will reasonably allow." (LFG-SB-010).

7

conflict with a low level of skepticism if there's no evidence of malice, of self-dealing, or of a parsimonious claims-granting history." Id.  However, the court "may weigh the conflict more heavily if there's evidence that the administrator has given inconsistent reasons for denial, has failed adequately to investigate a claim or ask the plaintiff for necessary evidence, or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly." Id.

**III.   ANALYSIS**

**A.   Conflict**

There is a structural conflict in this case, as Lincoln has the discretion to deny benefits that it would have to pay.  In deciding how much weight to give this fact in determining whether Lincoln's denial of benefits was based on "clearly erroneous" facts, the Court looks at other factors in the case.  First, there is no evidence of malice or self-dealing; the evidence presented in the administrative record shows that Lincoln acted in a reasonable manner.  Defendant initially denied Plaintiff's mental disability claim.  However, on appeal, Defendant sought out an independent evaluation of Plaintiff.  And though this evaluation was limited to a review of Plaintiff's medical records, when the psychiatrist opined that Plaintiff was unable to work, Defendant overturned its initial denial and awarded Plaintiff benefits.  There also is some evidence suggesting that Plaintiff has not been completely forthcoming during Defendant's evaluation process.  The occupational therapist who conducted one of Plaintiff's physical exams noted that Plaintiff showed signs of self-limiting behavior.  The occupational therapist also reported that Plaintiff refused to complete all of the tests she was asked to do. (LFG-SB-157).

Furthermore, Defendant's reasons for denial remained consistent.  In its initial denial and its denials after each appeal, Defendant argued that Plaintiff's pain, strength, and physical abilities were adequate for her to do a sedentary job.

Defendant's investigation also was thorough.  Rather than rely only on Plaintiff's medical history, Lincoln conducted two in-person examinations of Plaintiff.  Defendant also

considered Plaintiff's submissions, including additional medical information, letters from her nurse practitioner and co-workers, and here Social Security disability benefits award.

### B.     Denial of Benefits

The Court gives a low level of weight to the conflict, but that does not mean that Defendant's denial of benefits was proper.  The Court must also consider other factors apart from the conflict of interest, including (1) "the quality and quantity of the medical evidence;" (2) "whether the plan administrator subjected the claimant to an in-person medical evaluation or relied instead on a paper review of the claimant's existing medical records;" (3) whether the administrator gave its independent experts all the relevant evidence; and (4) "whether the administrator considered a contrary Social Security Administration disability."  Montour, 582 F.3d at 940.  Here, Defendant did not rely solely on a paper review of Plaintiff's records, and instead examined her twice.  The independent experts also were given all of the relevant evidence, including medical records and items submitted by Plaintiff.  Defendant also considered a contrary Social Security Administration decision.  Lincoln acknowledged the award, but said that the SSA and Defendant used different methods of determining whether a person was entitled to disability benefits.

The quality and quantity of the medical evidence is in some dispute.  Plaintiff argues that Defendant abused its discretion in four ways: (1) failing to properly consider Plaintiff's claim of disabling chronic pain; (2) failing to consider the effects of Plaintiff's medications on her ability to work; (3) failing to consult and rely on qualified medical professionals with relevant expertise; and (4) "cherry-picking" and misinterpreting the reports produced by their own physicians. Pl.'s Opp. to Def.'s Mot. for Summ. J. at 4.

Defendant properly took into account Plaintiff's complaints of chronic pain.  A chronic pain evaluation was done in February 2005, just a month after Plaintiff left her job. (LFG-SB-651-655).  Dr. Siciarz-Lambert discussed this evaluation in the initial report on Plaintiff's claim.  (LFG-SB-691).  Dr. Sab also noted this evaluation and stated that Plaintiff suffered from pain.  (LFG-SB-298-306).  The occupational therapist who examined Plaintiff also noted that she complained of serious pain.  (LFG-SB-115).  All the medical

9

professionals who reviewed Plaintiff's medical records or examined her in person – apart from Plaintiff's nurse practitioner – came to the same conclusion: that Plaintiff was physically well enough to work. A subjective diagnosis, such as pain level, is difficult to evaluate objectively. However, in this case the weight of evidence shows that Defendant at the very least considered Plaintiff's complaints of chronic pain, and it was not an abuse of discretion to consider these complaints and reject them.

Defendant also considered the effects of Plaintiff's medication. Lincoln was aware of the medication that Plaintiff was taking. The various drugs are named repeatedly throughout the record. However, nothing other than the letters from Plaintiff's nurse practitioner suggests that the drugs are interfering with Plaintiff's ability to work. On the contrary, the record is filled with references to how much better Plaintiff is doing because of the drugs. (See, e.g., LFG-SB-694-697). In a letter to Lincoln, Plaintiff's nurse practitioner stated that some of the drugs Plaintiff was taking had "severe side affects [sic]." (LFG-SB-352). In another letter, the nurse practitioner wrote that the medications were "affecting her thought process and concentration." (LFG-SB-297). These letters lack any details as to exactly how the medications were making it so that Plaintiff could not work or what particular drugs were causing the problems. Moreover, this claim is presented nowhere else, including in the initial claim filed by Plaintiff.

Plaintiff's last two arguments are also without merit. Defendant had several independent medical professionals evaluate Plaintiff's records and do in-person examinations. Federal regulations require the Defendant to consult with a "health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment." 29 C.F.R. § 2560.503-1(h)(iii). Plaintiff argues that because two of the doctors specialized in internal medicine, that they were not qualified to evaluate Plaintiff. The Court rejects this assertion. Dr. Siciarz-Lambert specializes in internal medicine, pulmonary, musculoskeletal and neurlogic disability evaluations. Dec. of Barbara True, Ex. B. Dr. Sab is a board-certified internist with certification in three states. Id., Ex. C. It is not an abuse of discretion to refer to even a general internist in like cases. Plaintiff complained

10

1  of many physical problems, including high blood pressure, pain, thyroid problems,
2  fibromyalgia, diabetes, and asthma.  It makes good sense that a plan administrator would
3  consult a generalist in such a situation.  In addition, Defendant did not rely solely on one
4  internist or a simple review of Plaintiff's records.  Instead, two medical doctors and a
5  occupational therapist all opined on Plaintiff's physical ability to do sedentary work.  They
6  all reached the same conclusion: that she could.  Plaintiff's argument that two doctors and a
7  occupational therapist are not capable of coming to a reasonable conclusion about her ability
8  to work is without merit.

9  Finally, Plaintiff argues that Defendant is "cherry-picking" evidence from the record.
10 There is no merit to this claim.  In fact, a full review of the administrative record
11 demonstrates that Defendant did not abuse its discretion by denying long-term disability
12 coverage to Plaintiff.  Several medical experts came to the same conclusion: that Plaintiff can
13 work.  Plaintiff only points to two strong pieces of evidence that she cannot: two letters
14 written by her nurse practitioner.  These letters are conclusory and represent only one
15 interpretation of Plaintiff's ability to work.  This nurse practitioner's opinion was considered
16 and rejected by other doctors.  "[P]lan administrators are not obliged to accord special
17 deference to the opinions of treating physicians."  Black & Decker Disability Plan v. Nord,
18 538 U.S. 822, 825 (2003).  Of course, administrators may not "arbitrarily refuse to credit a
19 claimant's reliable evidence."  Id. at 834.  But "courts have no warrant to require
20 administrators automatically to accord special weight to the opinions of a claimant's
21 physician; nor may courts impose on plan administrators a discrete burden of explanation
22 when they credit reliable evidence that conflicts with a treating physician's evaluation."  Id.
23 In this case, Plaintiff does not even rely on a treating physician.  Instead, she relies on a nurse
24 practitioner's conclusory statements.  A review of the entire administrative file shows that
25 Defendant did not abuse its discretion in denying Plaintiff long-term disability benefits.

26 There is no question that Plaintiff suffers from many regrettable health problems.
27 What is at issue here is whether those health problems prevent her from working in a
28 sedentary job.  Plaintiff was able to go on an international trip immediately before filing her

11

claim and she was able to do chores around the house and go on several walks a day. This Court finds that Lincoln did not abuse its discretion in finding that Plaintiff could perform a sedentary job, notwithstanding her health problems, and denying Plaintiff long-term disability benefits.

For the foregoing reasons, this Court GRANTS Defendant's motion for judgment and DENIES Plaintiff's motion for judgment.

**IT IS SO ORDERED.**

Dated: March 15, 2011

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California